UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTERFOCUS INC., A California Corporation,<br><br>　　　　Plaintiff,<br><br>v.<br><br>The Defendants Identified in SCHEDULE A,<br><br>　　　　Defendant. | Case No.: 1:22-cv-02259<br><br>Honorable Steven C. Seeger |

**PLAINTIFF INTERFOCUS INC.'S RESPONSE TO MINUTE ENTRY**

**I.　INTRODUCTION**

This Court's Minute Entry of August 9, 2022, directed Plaintiff to answer certain questions presented by the Court. (See Dkt. No. 17.) Plaintiff endeavors to answer the Court's questions below.

**II.　THIS COURT HAS THE STATUTORY AND EQUITABLE POWER TO RESTRAIN DEFENDANTS' ASSETS AT THE COMMENCEMENT OF THIS ACTION**

The Copyright Act provides that a "copyright owner is entitled to recover… any profits of the infringer that are attributable to the infringement…" 17 U.S.C. § 504(b). The Lanham Act similarly provides that "in any civil action arising under this Act, the plaintiff shall be entitled, subject to the principles of equity, to recover… defendant's profits…" 15 U.S.C. § 1117(a). InterFocus' complaint seeks the equitable relief those statutes permit, asking that this Court order "[t]hat Defendant account for and pay to Plaintiff…all profits Defendants realized by reason of Defendants' infringement… pursuant to 17 U.S.C. § 504(b) and 15 U.S.C. § 1117(a)." Dkt. No. 1 at 10.

Based on those statutes, this "Court unquestionably has the authority to freeze assets to preserve an equitable accounting of profits, a remedy provided to counterfeiting victims by 15 U.S.C. 1117(a)." *Johnson & Johnson v. Advanced Inventory Management, Inc.*, 2020 WL 8260381 *2 (N. D. Ill. 2020), quoting *Klipsch Group, Inc. v. Big Box Store Ltd.,* 2012 WL 5265727 at *4 (S.D.N.Y. Oct. 24, 2012) and citing *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F. 3d 66, 71-71 (2d Cir. 1998).

This Court questioned whether it may freeze assets in view of the Supreme Court's decision in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U. S. 308 (1999) (Dkt. No 17.) This Court cited *Grupo* for the proposition that a district court has "no authority to issue a preliminary injunction preventing [a defendant] from disposing of their assets pending adjudication of [plaintiff's] contract claim for money damages." Id. at 333.

*Grupo* is distinguishable from this case on its facts. The narrow question before the Court in *Grupo* was "whether, in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." 427 U.S. at 310. In *Grupo*, the defendant was a holding company that had defaulted on payment of notes and was at risk of insolvency. *Id.* at 311. Creditors filed suit to enjoin the defendant from making preferred payments to other creditors. *Id.* As this Court recognized, the *Grupo* Court "specifically noted that a restraint on assets was still proper if a suit sought equitable relief." See *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (citing *Grupo*, 527 U.S. at 333; *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 288 (1940))." (Dkt. 17.) That is the case here.

This is not a case filed to collect a debt. It is a case filed to prevent sales of counterfeit products in violation of Plaintiff Interfocus' rights under the Copyright Act and the Lanham Act,

2

both of which specifically provide for the issuance of injunctions and other equitable relief, including an accounting for profits. 17 U.S.C. § 504(b) and 15 U.S.C. § 1117(a).

In *Tiffany (NJ) LLC, Tifffany & Co. v. China Merchants Bank*, 589 Fed Appx. 550 (2d Cir. 2014), the Second Circuit affirmed the issuance of an asset freeze against several defendants in a trademark counterfeiting case. *Id.* at 551. The Court rejected the Bank's argument that the district court did not have the power to freeze assets under *Grupo*:

> [W]e also conclude that the district court had the equitable authority to issue the prejudgment asset freeze, relying again on the analysis in *Gucci*. The Supreme Court in *Grupo Mexicano* was careful not to abrogate the settled principle that in an action for equitable remedies, courts have the inherent authority to issue prejudgment asset freezes. *See* 527 U.S. at 325, 119 S.Ct. 1961 (noting that "preliminary relief available in a suit seeking equitable relief has nothing to do with the preliminary relief available in a creditor's bill seeking ... a legal debt"). In this case, Tiffany's complaint includes a request, under the Lanham Act, 15 U.S.C. § 1501, *et seq.*, for an "accounting and disgorgement of Defendants' illicit profits." J.A. 45. In accordance with our holding in *Gucci*—and well settled Supreme Court precedent—a claim for an accounting of profits under the Lanham Act is equitable in nature. Therefore, the district court had the equitable authority to issue a prejudgment **asset freeze** in this case.

*Id.* at 552. In *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 131-32 (2d Cir. 2014), the Second Circuit again distinguished *Grupo* and upheld an asset freeze in a trademark counterfeiting case brought under the Lanham Act. The Court explained that *Grupo* recognized that a court may issue a preliminary injunction freezing assets "where the plaintiff is pursuing a claim for final equitable relief [] and the preliminary injunction is ancillary to the final relief." *Id.* at 131. In *Gucci*, as in this case, plaintiffs sought an accounting of the defendants' profits under the Lanham Act. *Id.* The Second Circuit explained,

> [T]he common law action of "account" is one of the earliest examples of a restitutionary action in equity, imposing on a

3

> defendant the obligation to disclose and return profits from the use of the plaintiff's property . . . . [citations omitted]
> The Supreme Court, in *Hamilton–Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629 (1916), has explained that a trademark "infringer is required *in equity to account* for and yield up his gains to the true owner," and "profits are then allowed as an *equitable* measure of compensation." *Id.* at 259, 36 S.Ct. 269 (emphases added); *accord Sheldon v. Metro–Goldwyn Pictures Corp.,* 309 U.S. 390, 399, 60 S.Ct. 681, 84 L.Ed. 825 (1940) ("[R]ecovery [of profits] had been allowed in equity [prior to the statutory remedy] both in copyright and patent cases as appropriate equitable relief incident to a decree for an injunction.").

*Id*. at 131-132. The Court further noted that "it is not surprising that all three of our sister circuits to have considered the issue have unanimously held that district courts have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting against allegedly infringing defendants in Lanham Act cases." *Id.* at 132. The Second Circuit cited: *Animale Grp. Inc. v. Sunny's Perfume Inc.,* 256 Fed.Appx. 707, 709 (5th Cir.2007) (per curiam) (ruling that the district court was "authorized to preserve the status quo by entering a limited **asset freeze**" in a Lanham Act infringement case); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,* 51 F.3d 982, 987 (11th Cir.1995) (concluding that the "district court had the authority to **freeze** those **assets** which could have been used to satisfy an equitable award of profits" in a Lanham Act case); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.,* 970 F.2d 552, 562 (9th Cir.1992) ("The district court's inherent equitable power to **freeze** defendants' **assets** in cases in which an accounting is the ultimate relief sought is therefore not limited by the Lanham Act."). The Second Circuit also cited *CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 996 (7th Cir.2002) (noting that because plaintiff sought an "accounting and profits remedy" as an alternative form of relief under the Cable Communications Policy Act, an "**asset freeze** [was] thus proper" under *Grupo Mexicano* ).

4

In addition to the cases cited by the Second Circuit, the First Circuit, Fourth Circuit and Eighth Circuit, and 11th Circuit have reached the same conclusion. See *Pineda v. Skinner Services, Inc.*, 22 F. 4th 47, 48 (1st Cir. 2021) (district court had equitable authority to preliminarily freeze assets under *Grupo*); *In re Owens Corning*, 419 F. 3d 195, 208 n. 14 (3d Cir. 2007) (preliminary asset freeze proper when equitable relief sought); *United States ex rel Rahman v. Oncology Assocs., P.C.,* 198 F.3d 489, 496–97 (4th Cir. 1999) (*Deckert* authorizes a district court to preliminarily freeze assets in a case involving equitable claims);"); *Kennedy Bldg. Assocs. v. CBS Corp.,* 476 F.3d 530, 535 (8th Cir. 2007) ("Here, the underlying relief sought is equitable, rather than legal, so our case involves the use of equity in support of equity, rather than equity in support of a legal remedy."); *SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 734 (11th Cir.2005) ("*Grupo Mexicano* does not control the outcome of this case, because the SEC seeks equitable relief (disgorgement), not just money damages.").

This Court's second question—whether an asset freeze is appropriate if the Defendants do not appear—is answered by the uniform approval by courts of appeals for asset freezes in trademark and counterfeiting cases, cited above. As the Court in *Reebok* explained,

> "Section 1116(a) permits the issuance of 'injunctions, according to the principles of equity' designed 'to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office.' *Id.* 970 F.2d at 558. A trademark owner's "rights" under the Lanham Act "may include not only the right to be free from the unauthorized dilution of its trademark, but perhaps also the right under 15 U.S.C. § 1117 to recover defendant's profits and damages for that dilution. Although the relief provided by § 1117 is explicitly 'subject to the principles of equity,' [the 9th Circuit has] held that it is a *per se* abuse of discretion to fail to award relief under § 1117 that is adequate to make willful trademark infringement unprofitable." *Id*. at 559. In short, an asset freeze protects the trademark owner's right to make willful trademark infringement unprofitable.

5

970 F.2d at 562. The corollary is that if assets are not frozen, then there is simply no impediment to an Internet counterfeiter to disappear, along with its assets, effectively depriving this Court of jurisdiction to render an award that provides any relief to the plaintiff.

In counterfeiting cases, courts uniformly award transfers of frozen assets pursuant to the "inherent equitable power to issue remedies ancillary to its authority to provide final relief." *E.g., Off White LLC v. Warm House Store*, 2019 WL 418501 at *6 (S.D.N.Y. 2019) (and cases cited therein). This authority stems from the All Writs Act, 18 U.S.C.A. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."). *Id.* at *6, n.10. "That includes the power to 'issue such commands ... as may be necessary or appropriate to effectuate and to prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" *Microsoft Corp. v. Does 1-2*, 2021 WL 4755518 (E.D.N.Y. 2021), citing *In re Stabile*, 436 F. Supp. 2d 406, 413 (E.D.N.Y. 2006) (quoting *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985)). This authority applies to both parties and nonparties. *Id.* (quoting *United States v. Int'l Bhd. of Teamsters*, 266 F.3d 45, 49–50 (2d Cir. 2001)).

Further, courts have ordered asset freezes based on the equities present at the time the request is made, rather than actions a defendant may or may not take after being served with summons and complaint in the litigation. As the Seventh Circuit held in *CSC Holdings*, "the freeze [there]was appropriate and may remain in place pending final disposition of the case" because "the assets in question here were profits the [defendants] made by unlawfully stealing [the plaintiff's] services…" *CSC Holdings, Inc. v. Redisi,* supra, 309 F. 3d at 996 (7th Cir.2002). In other words, *CSC* holds that a district court may freeze assets because an "equitable interest is

6

claimed" in them, rather than speculations about a defendants' possible future inaction in the litigation. *JSC Foreign Econ. Ass'n Technostroyexpoert v. Int'l Dev. And Trade Servs., Inc.,* 295 F.Supp.2d 366, 389 (S.D.N.Y.2003), cited with approval in *CSC Holdings*, *supra*. Since Plaintiff here claims an equitable interest in Defendant's profits from the sale of infringing and counterfeit InterFocus goods, and seeks an equitable accounting of Defendants' profits from that infringing and counterfeiting activity, an asset restraint is appropriate and should issue in InterFocus' favor under *CSC*.

Further, while Plaintiff can present, and has presented, evidence supporting equitable relief, and this Court can evaluate that evidence and decide how best to preserve equitable remedies under the facts presented to it, it is impossible for the Court, or Plaintiff, to know whether, and to what extent, a Defendant will participate in litigation in the future. Thus, this Court should restrain Defendant's assets to preserve the status quo, while providing Defendant with a due process opportunity to have that restraint lifted if it presents evidence justifying that result.

Moreover, although any defendant may default, many defendants do appear and defend their actions in counterfeiting cases like this one. See, e.g., *Animale Group, Inc v. Sunny's Perfume Inc.,* supra, 256 Fed. Appx. at 708 (court affirms preliminary asset freeze against trademark infringement defendant who appeared and defended itself in action). Others appear, but actively work to conceal assets after their appearance. See *Volkswagen AG, et al. v. hkseller* *2011,* 2019 WL 10369660 at *2 (N.D. Ill. May 6, 2019). In *Volkswagen,* defendants appeared but then "took deliberate action to avoid the asset restraint imposed in this case," (*id*), significantly reducing the amount of restrained assets known to the court. After entering summary judgment for plaintiff on its Lanham Act claims and concluding that defendants' actions made it

"impossible to know the total extent to which Defendants have unlawfully used… [Plaintiff's] trademarks" (*id.*), the court entered judgment in the amount of $200,000, an amount not satisfied beyond the significantly reduced restrained funds. *Id.* at *3.

In addition, an asset restraint is appropriate even though Defendant may choose to default, because it should not be rewarded for ignoring its responsibilities in a legal proceeding, or because other defendants have ignored their responsibilities in other legal proceedings in the past. Our judicial system is designed to achieve fair results by giving each litigant an opportunity to submit the evidence and arguments it believes supports its position to the Court. This Court can then decide the merits based on the evidence and arguments presented.

Further, an asset freeze here is proper for another reason, namely to prevent the assets in dispute from being dissipated in other judicial proceedings during the pendency of this action. As the Court noted in *Eicher Motor Ltd. v. Individuals Identified on Schedule A Hereto,* 2022 WL 3081869, *3 (N.D. Ill. August 3, 2022)*, "TROs, preliminary injunctions, and default judgments imposing, and later dissolving, asset freezes issue rapidly in similar counterfeiting suits with little to no attention paid to whether any other suits are pending involving the seller defendants or whether their assets have been frozen. When… a case proceeds to default judgment, the contents of the defendants' merchant accounts are typically released to the plaintiff to satisfy the judgment, effectively frustrating the ability of other plaintiffs…to obtain an accounting from the seller. The balance of equities favors freezing defendants' assets to avoid the possibility of this result."

## III.    CONCLUSION

Defendants' unlawful operations are irreparably harming Plaintiff's business. In view of the foregoing, and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a TRO that includes an asset restraint in the form submitted herewith.

Date:  August 19, 2022

Respectfully submitted,

RIMON, P.C.

/s/ Eric C. Cohen

Ill. ARDC No. 0473685
Rimon P.C.
980 N. Michigan Ave., Suite 1400
Chicago, IL 60611
Telephone: (984) 960-2860
Email: eric.cohen@rimonlaw.com

Mark S. Lee
Rimon, P.C.
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
Telephone: 310.561.5776
Email: mark.lee@rimonlaw.com

Zheng Liu
Rimon P.C.
800 Oak Grove Ave., Suite 250
Menlo Park, CA 94025
Telephone: (650) 382-4546
Email: zheng.liu@rimonlaw.com

Attorneys for Plaintiff, INTERFOCUS INC.