**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

INTERFOCUS INC., a California Corporation,

Plaintiff,

v.

The Defendants Identified in Schedule A,

Defendants.

Case No.: 1:22-cv-02259

Honorable Steven C. Seeger

**REDACTED**

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, TO EXPEDITE THE PRELIMINARY INJUNCTION HEARING, AND TO EXTEND THE OCTOBER 4, 2022 TEMPORARY RESTRAINING ORDER**

# TABLE OF CONTENTS

**Page**


I. BACKGROUND ........ 1

II. PROCEDURAL HISTORY ........ 3

III. LEGAL STANDARD ........ 6

IV. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED ... 6

- A. No Reasonable Likelihood Of Success On The Merits ........ 7
- B. No Irreparable Harm ........ 8
- C. Harm Suffered By Defendants Outweighs Plaintiff's Harm ........ 10
- D. A Preliminary Injunction Is Against Public Policy ........ 13

V. A BOND SHOULD SECURE AS AN ALTERNATIVE ........ 14

VI. REQUEST FOR EXPEDITED HEARING ........ 14

VII. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Animale Grp. Inc. v. Sunny's Perfume Inc.*,
256 Fed.Appx. 707 (5th Cir.2007)....................10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................7

*Bidi Vapor, LLC v. Vaperz LLC*,
543 F. Supp. 3d 619 (N.D. Ill. 2021)....................6, 14

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*,
498 U.S. 533 (1991)....................5

*Caterpillar, Inc. v. Walt Disney Co.*,
287 F. Supp.2d 913 (N.D. Ill. 2003)....................13

*Clark v. Bumbo Int'l Tr.*,
No. 15 C 2725, 2017 WL 3704825 (N.D. Ill. Aug. 28, 2017)....................9

*Courthouse News Service v. Brown*,
908 F. 3d 1063 (7th Cir. 2018)....................13

*Eicher Motor Ltd. v. Individuals Identified on Schedule A Hereto*,
2022 WL 3081869 (N.D. Ill. August 3, 2022)....................10

*Eveready Battery Co., Inc. v. Adolph Coors Co.*
765 F.Supp. 440 (N.D. Ill. 1991)....................6

*Frederick Atkins, Inc. v. Carson Pirie Scott & Co., Inc.*,
No. 99 C 7838, 1999 WL 1249342 (N.D. Ill. Dec. 13, 1999)....................3, 13

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999)....................10

*Gucci America, Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014)....................10

*Johnson & Johnson v. Advanced Inventory Management, Inc.*,
2020 WL 8260381 (N. D. Ill. 2020)....................10

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. And Trade Servs., Inc.*,
295 F.Supp.2d 366 (S.D.N.Y.2003)....................10

*Kennedy Bldg. Assocs. v. CBS Corp.*,
476 F.3d 530 (8th Cir. 2007) ....................10

*Klipsch Group, Inc. v. Big Box Store Ltd.*,
2012 WL 5265727 (S.D.N.Y. Oct. 24, 2012) ....................10, 14

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*,
51 F.3d 982 (11th Cir.1995) ....................10

*Lipton v. Chattem, Inc.*,
289 F.R.D. 456 (N.D. Ill. 2013) ....................8

*Microsoft Corp. v. Does 1-2*,
2021 WL 4755518 (E.D.N.Y. 2021) ....................10

*Off White LLC v. Warm House Store*,
2019 WL 418501 (S.D.N.Y. 2019) ....................10

*In re Owens Corning*,
419 F. 3d 195 (3d Cir. 2007) ....................10

*United States ex rel Rahman v. Oncology Assocs., P.C.*,
198 F.3d 489 (4th Cir. 1999) ....................10

*Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*,
970 F.2d 552 (9th Cir.1992) ....................10

*SEC v. ETS Payphones, Inc.*,
408 F.3d 727 (11th Cir.2005) ....................10

*Tiffany (NJ) LLC, Tifffany & Co. v. China Merchants Bank*,
589 Fed Appx. 550 (2d Cir. 2014) ....................10

**Statutes**

Lanham Act ....................7, 10

**Other Authorities**

Fed. R. Civ. P. Rule 65(d) ....................6, 9

Rule 7.1 ....................1

## I. BACKGROUND[1]

Defendants Hangzhou Hibaby Technology Co., Ltd. and Hibobi Technology Limited, (together, "Hibobi" or "Defendants") is a startup company that operates an e-commerce platform, **hibobi.com**. Hibobi is an official licensee of [REDACTED] and works to commercialize world-class copyright works, including [REDACTED], in [REDACTED]. *Declaration of Zhixiong (Owen) Liu* (*Liu Decl.*), ¶¶ 11-13, Exs. B, C, D. Its global revenue in 2021 totals over [REDACTED]. *Id.*, ¶ 17. Defendants also compete with Plaintiff InterFocus, Inc. ("InterFocus" or "Plaintiff") in the United States, as both operate e-commerce platforms for parent-child products. *Liu Decl.*, ¶¶ 17, 18, Ex. F. More details regarding Plaintiff's platform PatPat are publicly available. *The Second Declaration of Zhixiong (Owen) Liu* (*Liu Decl. II*), ¶3, Exs. K (original Chinese article), L (certified English translation).

The parties to this case are not strangers. In July 2021, Defendants' CEO, Mr. Feilong Huang, defeated Plaintiff's non-compete lawsuit in China. *Liu Decl. II*, ¶4, Exs. M, N. The court found that Plaintiff's Chinese entity failed to pay Mr. Huang the agreed-upon postemployment benefits and thus could not enforce the non-compete clause. *Id.*

The present case is a continuation of Plaintiff's anticompetitive litigation campaign. Plaintiff "rush[ed] into court" to file this Schedule A case. *See* D.I. 17. It characterized Hibobi as a random counterfeit shop and asked for a Temporary Restraining Order ("TRO") and a preliminary injunction, without informing the Court that it had detailed information about Defendants due to the non-compete lawsuit and the employment history. *Liu Decl. II*, ¶4, Exs. M, N.

[1] Defendants make this special appearance to respond to Plaintiff's motion for preliminary injunction. Defendants reserve their right to contest personal jurisdiction.

Plaintiff further relies on misleading evidence to support its Motions for Preliminary Injunction ("PI Motion"). Specifically, the PI Motion relies on Hibobi's webpage screenshots captured in late 2021 and early 2022 that identify 31 products at issue. *See* D.I. 10 (TRO Motion), *Rosenblum Declaration ISO Motion for TRO* (*Rosenblum Decl.*), ¶¶4-44. However, when the PI Motion was filed on October 13, 2022, about two-thirds of the accused products were no longer listed, *Liu Decl.*, ¶¶ 22, 24, 25, Ex. I (summary of product removal date and time), Ex. J (backend data showing product removal date, time, and reason), Ex. O (English translation of the backend data). Plaintiff's PI Motion relied on the outdated screenshots captured almost one year ago, which creates the false impression that Defendants' infringement is ongoing and will continue.

This outdated evidence mischaracterizes Defendants. In fact, immediately after its management became aware of this lawsuit[2], Defendants started to comprehend the filings and investigate the accused products. Defendants removed the remaining accused products by October 21, 2022, as acknowledged by Plaintiff's counsel. *Ziyong Li Declaration* (*Li. Decl.*), ¶ 3, Ex. P ("[Y]our client has finally (apparently) removed the infringing products from its website[.]").

However, the impact of the expired TRO continues. Hibobi's Apple application, "hibobi-Kids Fashion Online" ("Hibobi Apple App") was still being hidden when Defendants checked the status on October 25, 2022. "Hidden" means Hibobi Apple App cannot be downloaded by customers worldwide. *Liu Decl. II*, ¶ 6. In addition, the daily downloads of Hibobi Apple App have dropped from over [REDACTED] in its main markets before the TRO to virtually zero thereafter. *Liu Decl. II*, ¶ 7, Ex. R. Given the current holiday season, this download depletion would cause irreparable harm to Defendants, a startup e-commerce company relying on growth during the

---

[2] Because the filings were served via Defendants' customer service email address, Defendants' management was not aware of the lawsuit until after Apple and [REDACTED] sent notices to Defendants' emails that are different from Defendants' customer service email. *Liu Decl. II*, ¶ 5, Exs. Q, T.

holiday season. *Liu Decl. II*, ¶ 8, *see Frederick Atkins, Inc. v. Carson Pirie Scott & Co., Inc.*, No. 99 C 7838, 1999 WL 1249342, *3 (N.D. Ill. Dec. 13, 1999) ("[G]iven the seasonal nature of the goods and the short amount of time remaining before Christmas, the defendants would suffer great irreparable harm if [plaintiff's] motion were granted.").

Similarly, Hibobi's [REDACTED]t accounts were still being restricted when Hibobi checked the status on October 25, 2022. *Liu Decl. II*, ¶ 9. The amount being restricted is over [REDACTED]l account and over [REDACTED] account, both of which include non-U.S. sales revenue over [REDACTED] *Liu Decl.*, ¶¶ 26, 27, Exs. G, H. Based on the backend data collected by Defendants, the total sales of the accused products in the U.S. are less than [REDACTED] *Liu Decl.*, ¶ 23, Ex. I. Considering Defendants currently list over [REDACTED] worldwide with a global annual revenue over [REDACTED] in 2021, *Liu Decl.*, ¶¶ 15-17, the worldwide impact on Defendants is much more severe than any reasonable harm Plaintiff could prove.

Furthermore, on October 21, 2022, Hibobi received a notice from its third-party logistics partner, [REDACTED]. [REDACTED] refused to ship Hibobi's 87 parcels of non-infringing products from Hong Kong to [REDACTED], "due to [Hibobi's] account is blocked." *Liu Decl.*, *II* ¶ 10, Ex. S. To the extent Plaintiff facilitated this block, such use of the TRO is abusive. For the reasons explained in detail below, Defendants respectfully request the Court deny Plaintiff's PI Motion.

## II. PROCEDURAL HISTORY

Plaintiff captured screenshots of Defendants' website from late 2021 to early 2022. *Li. Decl.*, ¶ 4; *see also* D.I. 10 (TRO Motion), *Rosenblum Decl.*, ¶¶4-44. It has been using the same set of screenshots to support multiple filings throughout the case, including the most recent PI

Motion, alleging that Defendants infringement is "ongoing,"[3] without informing the Court that most of the screenshots and associated products are no longer listed.

Plaintiff filed its complaint on April 29, 2022. On May 3, 2022, Plaintiff filed its TRO Motion relying on the declaration of Mr. Robert Rosenblum, who "gathered, supervised others who gathered, and collaborated with others in gathering" screenshots of pages taken from the Defendants' website. D.I. 10 (TRO Motion), *Rosenblum Decl.*, ¶2. The metadata printed on the exhibits shows that the screenshots were taken from December 23, 2021 to March 23, 2022. *Li Decl.*, ¶ 4. The screenshots relate to 31 products at issue, six of which were no longer listed when the TRO Motion was filed. *Liu Decl.*, ¶ 22, Ex. I. On May 27, 2022, Plaintiff filed a Motion for Immediately Entry of Temporary Restraining Order. D.I. 15. At the time of this filing, one more product had been removed. *Liu Decl.*, ¶ 22, Ex. I. On August 19, 2022, Plaintiff responded to the Court's question regarding asset freeze, without informing the Court that 23 out of the 31 products were no longer listed. *Id.*

When Plaintiff finally filed its PI Motion on October 13, 2022, it stated that "[t]he grounds for this motion are ***set forth in Plaintiff's previously filed motions for an ex parte temporary restraining order***." D.I. 26 (PI Motion) at 1 (emphasis added). Facts do not support this argument because at that point, only 7 of the original 31 products at issue were still listed on Defendants' website. *Id.* Other products were delisted or de-shelved for various business reasons. *See Liu Decl.*, ¶ 25, Ex. J and Ex. O (English translation of Hibobi's backend system showing the dates and reasons for delisting or "de-shelving").

The above chronology is summarized in the table below:

[3] *See* D.I. 10, Memo ISO Plaintiff's TRO Motion at 2 ("Defendants' ***ongoing*** unlawful activities should be restrained"), at 11 ("to prevent the Defendants from ***continuing*** to benefit from their unauthorized copying and distribution") (emphasis added).

| Date | Plaintiff's Brief | Number of products removed out of the 31 products identified in the TRO motion |
|---|---|---|
| May 3, 2022 | TRO Motion (relying on Rosenblum Declaration) | 6 out of 31 |
| May 27, 2022 | Motion for Immediate Entry of Temporary Restraining Order | 7 out of 31 |
| August 19, 2022 | Plaintiff's Response to Minute Entry | 23 out of 31 |
| October 13, 2022 | Plaintiff's PI Motion | 24 out of 31 |

In each of the above filings, Plaintiff could have and should have informed the Court on the changes of the listing, but it failed to do so. As a result, it appears that Plaintiff's counsel failed to conduct a reasonable inquiry into the facts. *See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 551 (1991) (holding attorneys have an affirmative duty to "conduct a reasonable inquiry into the facts . . . before filing.").

Defendants raised this misleading evidence issue to Plaintiff as early as October 19, 2022, two days after Defendants retained counsel. *Li Decl.*, ¶ 3, Ex. P. When Plaintiff asked "why you contend that such evidence was 'misleading[,]'" Defendants pointed Plaintiff to the documents produced on the same day with bates numbers, HIBOBIINTERFOCUS0000100—0000139, which shows when and why each accused products was removed from Defendants' platform. *Id.*, *see also* Ex. O (certified translation of the product removal records).

Plaintiff first admitted that "[Defendants] finally (apparently) removed the infringing products from its website," *Li Decl.*, ¶ 3, Ex. P, but later alleged that "Hibobi has put new infringing products on its website. . . . Thus, Hibobi has been in contempt of the TRO." *Li Decl.*, ¶ 6, Ex. W. However, when Defendants requested Plaintiff to identify any potential infringing images,[4]

[4] *Li Decl.*, ¶ 3, Ex. P ("To the extent Plaintiff has specific images that it believes Defendants are still infringing, Defendants request Plaintiff immediately provide those images, and Defendants will make good faith efforts to remove them as soon as feasible.")

Plaintiff refused to do so. *Li Decl.*, ¶ 6, Ex. W. Throughout this process, Defendants have been asking for a meet and confer, but Plaintiff pocket-vetoed it on the due date of this brief. *Li Decl.*, ¶ 3 Ex. P. The final position Plaintiff took to date is that it does not have an obligation to report to the Court regarding the change of the evidence:

> **1. Alleged outdated evidence.** Your email incorrectly assumes InterFocus was obligated to report to the Court in its TRO motion that Defendants ("Hibobi") had removed some infringing product it sold on Hibobi's website before the motion for TRO had been filed. You do

*Li Decl.*, ¶ 3 Ex. P.

## III. LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy," and will not be granted by the Court unless the movant "by a clear showing, carries the burden of persuasion." *Bidi Vapor, LLC v. Vaperz LLC*, 543 F. Supp. 3d 619, 625 (N.D. Ill. 2021). The Plaintiff must prove that: 1) it has at least a reasonable likelihood of success on the merits; 2) it has no adequate remedy at law and will be irreparably harmed if the injunction does not issue; 3) the threatened injury to the Plaintiff outweighs the threatened harm the injunction may inflict on Defendants; and 4) the granting of a preliminary injunction will not disserve the public interest. *See Eveready Battery Co., Inc. v. Adolph Coors Co.* 765 F.Supp. 440, 444 (N.D. Ill. 1991).

## IV. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED

As a threshold matter, Plaintiff's PI Motion should be denied because it lacks specificity as to what acts it intends to restrain. The motion simply states that "[t]he grounds for this motion are set forth in Plaintiff's previously filed motions for an *ex parte* temporary restraining order" and propose that "[i]f Defendants do not file a Response on or before October 25, 2022, then the Court will grant Plaintiff's Motion for a Preliminary Injunction and no hearing will be held." D.I. 26 at 1 and D.I. 26-1 at 1. This request should be denied because it lacks specificity. *See* Fed. R. Civ.

P. Rule 65(d) ("Every order granting an injunction and every restraining order must: . . . ***state its terms specifically*** [and] describe in ***reasonable detail***—and ***not by referring to the complaint or other document***—the act or acts restrained or required.") (emphasis added). To the extent Plaintiff intends to restrain the same acts as in its TRO Motion, it lacks merit.

**A. No Reasonable Likelihood Of Success On The Merits**

In the Complaint, Plaintiff alleges that it asserted "more than thirty registered images (the 'InterFocus Copyrighted Images') referenced in Exhibit 2." D.I. 1 (Complaint), ¶ 7. However, Plaintiff's witness revealed that these registrations include hundreds of, if not thousands of images. *See* D.I. 10 (TRO Motion), *Graham Decl.*, ¶ 9 ("InterFocus has filed over 450 copyright applications with the U.S. copyright Office, most of them group registrations for more than 700 unpublished photographs, and thus has registered tens of thousands of photographs with the U.S. Copyright Office."); *see also* D.I. 10 (TRO Motion), *Rosenblum Decl.*, Exs. 1A-44A (showing hundreds of, if not thousands of, "Individual Photographs"). Plaintiff failed to state which photographs are asserted exactly and thus, failed to provide a boundary of the asserted claims. The Complaint must be dismissed under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (The complaint must "give the defendant fair notice of what the ... claim is.").

Regarding Plaintiff's Lanham Act claim, given the small amount of sales [redacted] [redacted]), *see Liu Decl.*, ¶¶ 22, 23, Ex. I, it is unlikely for Plaintiff to prove that the relevant sales would cause "confusion [or] has caused confusion with respect to the origin, sponsorship or approval of [the products at issue]." D.I. 1 (Complaint), ¶ 31. Indeed, the attention attracted by Plaintiff's logo on the accused websites is minimal, if any at all. *See Li Decl.*, ¶ 5, Ex. U. Given that both Plaintiff and Defendants have their own logos on top of their platforms, D.I. 10 (TRO Motion), *Graham Decl.*, ¶¶ 5, 11, Exs. 1, 4, the likelihood of confusion is even lower.

**B. No Irreparable Harm**

1. *Injunction over Hibobi's business operation*

As discussed above, Defendants have removed all accused products and pictures identified by Plaintiff. *Li Decl.*, ¶ 3, Ex. P. In the October 21, 2022 email, Defendants' counsel also asked Plaintiff's counsel to identify any other images on the Hibobi platform that it believes to infringe Plaintiff's copyright. *Id.* ("To the extent Plaintiff has specific images that it believes Defendants are still infringing, Defendants request Plaintiff immediately provide those images, and Defendants will make good faith efforts to remove them as soon as feasible."). To date, Plaintiff has not provided such information. The total sales at issue of the accused products are less than [redacted], and the total items at issue sold is less than [redacted] *Liu Decl.*, ¶¶ 22-23, Ex. I. In fact, 12 of the 31 accused products do not have relevant sales at all. *See* Ex. I. With this small amount of sales, there is no reasonable basis to claim any irreparable harm. Plaintiff also claims that "Defendants did not even disguise the PatPat logo that are still on InterFocus Copyrighted Images," relying on Exhibits 4D and 8D of Declaration of Robert Rosenblum. D.I. 10 at 7; *Li Decl.*, ¶5, Ex. U. However, an ordinary observer could hardly see the PatPat logo on these two exhibits. *See* Ex. U. The minimal attention an ordinary observer would spend on the PatPat logo together with the negligible sales amount cannot support Plaintiff's claim that "Plaintiff's reputation, goodwill, marketing plan and the possible diversion of customers are all irreparable and incalculable." D.I. 10 (TRO Motion) at 9.

In addition, Plaintiff's request is moot, as Hibobi has taken down all accused pictures and products as admitted by Plaintiff's counsel. *Li Decl.*, ¶ 3, Ex. P. *Lipton v. Chattem, Inc.*, 289 F.R.D. 456, 461 (N.D. Ill. 2013) (holding injunctive relief was moot after defendant stopped engaging in the unlawful act). Here, Hibobi also offered to remove other products that Plaintiff could identify in good faith even though Plaintiff has not identified any to date. *Li Decl.*, ¶ 3,

Ex. P. As the Plaintiff asserted, "[t]his is not a case filed to collect a debt. It is a case filed to prevent sales of counterfeit products . . . ." D.I. 17 at 2. Now that the accused products have been delisted, the TRO over Defendants' websites and applications is no longer necessary.

On October 25, 2022, the due date of this brief, Plaintiff alleges that "Hibobi has put new infringing products on its website":

> fact that Hibobi had taken some infringing products off of its website is irrelevant, especially where, as here, Hibobi has put new infringing products on its website. Further, although we believed at one point that Hibobi had removed all infringing products from its website, we have discovered that is not the case. Thus, Hibobi has been in contempt of the TRO. Unless Hibobi removes all infringing product from all of its websites, we shall file a motion to hold Hibobi in contempt.

Li Decl., ¶6, Ex. W. However, Plaintiff again refused to identify a single "infringing product" when this brief is due. *Id.* A preliminary injunction should not be awarded to protect this unspecified copyright. *See* Fed. R. Civ. P. Rule 65(d) (injunction "must: . . . describe in ***reasonable detail***") (emphasis added); *see also Clark v. Bumbo Int'l Tr.,* No. 15 C 2725, 2017 WL 3704825, at *4 (N.D. Ill. Aug. 28, 2017) ("[T]he fact that it is 'theoretically possible' that the defendant will resume the allegedly unlawful conduct after the litigation's conclusion does not defeat mootness where 'that possibility is supported only by speculation and not evidence.'").

2. *Asset Freeze*

Plaintiff also requested an asset freeze "to preserve an equitable accounting of profits." D.I. 19 at 2. However, given that Defendants have already produced relevant sales information, *Liu Decl*., ¶¶ 22, 23, *Liu Decl. II*, Exs. I, V, there is no need to freeze assets to perform accounting.

Plaintiff argues that Defendants are more likely to "transfer[] assets to avoid liability." D.I. 10 at 1. However, this is not a case where Plaintiff is truly unaware of Defendants' whereabouts. Rather, Plaintiff has a long history with Defendants due to the non-compete dispute. *See* Ex. N. Defendants also disclosed their company structure, addresses, as well as the onshore and offshore

entities. *Liu Decl.*, ¶¶ 5-9, Ex. A . Thus, Plaintiff has no reasonable basis to make the "transferring assets to avoid liability" argument. In addition, Plaintiff's attempt to enforce the "liability" is exactly the reason to deny the preliminary asset freeze because the monetary "liability" is essentially a "debt." *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 321 (1999) ("a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property.").

The cases relied on by Plaintiff do not support an asset freeze. Those cases opined on equitable relief and accounting profits.[5] Since Defendants already disclosed the detailed sales information of the associated products, *Liu Decl., II*, ¶ 6, Ex. V, accounting profit is not a valid reason to freeze Defendants' financial accounts. *Liu Decl.*, ¶¶ 26, 27.

**C. Harm Suffered By Defendants Outweighs Plaintiff's Harm**

Hibobi is a parent-child fashion entrepreneurship formed in 2019. *Liu Decl.*, ¶ 4. In the last few years, it has reached an annual worldwide revenue milestone of over [REDACTED] in 2021. *Liu Decl.*, ¶ 17. [REDACTED]

[5] *See Johnson & Johnson v. Advanced Inventory Management, Inc.*, 2020 WL 8260381 *2 (N. D. Ill. 2020) ("an equitable accounting of profits"); *Klipsch Group, Inc. v. Big Box Store Ltd.*, 2012 WL 5265727 at *5 (S.D.N.Y. Oct. 24, 2012) ("power to freeze assets to preserve a later award of an equitable accounting"); *Tiffany (NJ) LLC, Tifffany & Co. v. China Merchants Bank*, 589 Fed Appx. 550, 552 (2d Cir. 2014) ("a claim for an accounting of profits under the Lanham Act is equitable in nature"); *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 130 (2d Cir. 2014) ("Plaintiffs here seek the equitable remedy of an accounting of profits."); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 Fed.Appx. 707, 709 (5th Cir.2007) ("Plaintiffs seek an accounting of lost profits under the Lanham Act"); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir.1995) ("equitable remedy of receiving appellants' profits"); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir.1992) ("equitable remedies"); *In re Owens Corning*, 419 F. 3d 195, 208 (3d Cir. 2007) ("equitable remedy"); *United States ex rel Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489, 498 (4th Cir. 1999) ("equitable claims"); *Kennedy Bldg. Assocs. v. CBS Corp.*, 476 F.3d 530, 535 (8th Cir. 2007) ("the use of equity in support of equity"); *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 736 (11th Cir.2005) ("submitting accountings"); *Off White LLC v. Warm House Store*, 2019 WL 418501 at *6 (S.D.N.Y. 2019) ("equitable powers"); *Microsoft Corp. v. Does 1-2*, 2021 WL 4755518 at *9 (E.D.N.Y. 2021) ("equitable relief"); *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. And Trade Servs., Inc.*, 295 F.Supp.2d 366, 387 (S.D.N.Y.2003) ("seeks an accounting"); *Eicher Motor Ltd. v. Individuals Identified on Schedule A Hereto*, 2022 WL 3081869, *3 (N.D. Ill. August 3, 2022) (allowing freeze assets to that multiple plaintiffs can account).



. Hibobi also competes with Plaintiff's e-commerce platform (patpat.com) in the United States, even though Hibobi's US sales are still at an early stage. *See Liu Decl.*, ¶ 17. . *Liu Decl.*, ¶¶ 15, 16. On the other hand, Plaintiff only identified 31 associated products. The relevant revenue is less than *Liu Decl.*, ¶¶ 22, 23, *Liu Decl. II*, Exs. I, V.

However, Plaintiff attempted to leverage these 31 products and the TRO to an extreme. Since Hibobi received an infringement notice from Apple, the Hibobi Apple App has been hidden in the App Store, *Liu Decl. II.*, ¶¶ 5, 6, Ex. Q, and the downloads are depleted globally, affecting Hibobi's critical markets in as shown below:



*Liu Decl. II*, ¶ 7, Ex. R. before the TRO (October 5, 2022) to virtually zero after the TRO (October 16, 2022). *Id.* Similarly, the

average downloads in before the TRO to virtually zero after the TRO. This trend is true in other countries as well. *Id.* This becomes a choking hazard to Hibobi, a three-year old startup company.

Regarding the at issue,



The frozen amount, involving irrelevant sales and other jurisdictions, is way beyond any irreparable harm Plaintiff could prove.

Furthermore, on October 21, 2022, Defendants received a notice from its third-party logistics partner, . The company refused to ship Defendants' 87 parcels of non-infringing products from Hong Kong to , "due to [Hibobi's] account is blocked." *Liu Decl. II*, Ex. S. Shortly after, Plaintiff sent an email to Defendants, stating that "Be advised that Plaintiff shall continue to take all steps necessary to enforce its rights and to prevent further acts of infringement by your client in the United States." *Li Decl.*, ¶ 3, Ex. P. To the extent Plaintiff uses the TRO outside its scope, such use is abusive.

Defendants also respectfully request the Court consider the PI Motion in the context of the current holiday season, which is critical to Defendants' revenue and expansion. For example, Defendants' global sales data in 2021 show that the sales had a significant jump in October and November ) compared with the number in September ( . *Liu Decl.*, 18, Ex. F. Several courts in this district have denied injunctive relief in copyright infringement cases because of the holiday retail season. For example, in *Frederick*

*Atkins, Inc. v. Carson Pirie Scott & Co., Inc.*, the court denied the plaintiff's request for TRO for alleged copyright, trademark and trade dress infringement because "given the seasonal nature of the goods and the short amount of time remaining before Christmas, the defendants would suffer great irreparable harm if [plaintiff's] motion were granted." No. 99 C 7838, 1999 WL 1249342, *3 (N.D. Ill. Dec. 13, 1999). The court noted that "[i]f the harm to the defendant significantly outweighs the harm to the plaintiff to a significant degree then the injunction must be denied regardless of the plaintiff's likelihood of success." *Id.* at*1; *see also Caterpillar, Inc. v. Walt Disney Co.*, 287 F. Supp.2d 913, 923 (N.D. Ill. 2003) (denying TRO for alleged trademark infringement based on balance of the harms in part due to "loss of more time during the holiday season"). As such, Defendants request the Court deny the PI Motion as the harm to Defendants so greatly outweighs any harm to Plaintiff.

**D. A Preliminary Injunction Is Against Public Policy**

"[T]he court must ask whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties." *Courthouse News Service v. Brown*, 908 F. 3d 1063, 1068 (7th Cir. 2018). Here, if the preliminary injunction is granted, it would harm at least three groups of non-parties: Defendants' IP licensors; the consumers; and the legal suppliers on Defendants' platform.



First, as discussed above, Defendants' operation is experiencing a great disturbance, *See Liu Decl.*, ¶ 11, Exs. B, C. Second, the customers, cannot download the e-commerce platform to buy legitimate products. *See Liu Decl. II*, ¶7, Ex. R. Third, since most of the products on Hibobi platform are

not accused, the suppliers of those products would be harmed due to the reduction of the App users. *See Liu Decl.*, ¶¶ 15, 16.

Plaintiff argues that "[t]he public is currently under the false impression that Defendants are operating an internet store with Plaintiff's approval and endorsement." D.I. 10 (TRO Motion) at 10. It ignores the fact that the total associated sales are less than [REDACTED] and the total number of accused products sold are less [REDACTED]. *Liu Decl.*, ¶¶ 22-23, Ex. I. Given the small number of products and customers involved, there is no reasonable basis to believe the injury to the ***public*** is significant. A preliminary injunction will curtain commercial competition.

In addition, a preliminary injunction is "an extraordinary and drastic remedy," and granting such remedy requested with outdated and misleading evidence would encourage irresponsible and abusive litigation tactics. *See Bidi Vapor*, 543 F. Supp. 3d at 625 ("[A] preliminary injunction is an extraordinary and drastic remedy[.]").

## V. A BOND SHOULD SECURE AS AN ALTERNATIVE

To the extent that the Court believes Plaintiff will suffer irreparable harm, Defendants request the Court consider a bond of no more than one hundred thousand ($100,000) instead of granting the preliminary injunction. *See Klipsch Group, Inc. v. Big Box Store Ltd.*, 2012 WL 5265727 at *11 (S.D.N.Y. Oct. 24, 2012) ("a restraint in excess of $20,000, a sum that the Court has concluded is in excess of the amount necessary to preserve Plaintiff's entitlement to an award of profits, would not be equitable.").

## VI. REQUEST FOR EXPEDITED HEARING

Defendants join Plaintiff to expedite the preliminary injunction hearing.

## VII. CONCLUSION

For the above reasons, Defendants respectfully request the Court deny Plaintiff's PI Motion and Motion to Extent The Temporary Restraining Order.

Dated: October 25, 2022

Respectfully submitted,

*/s/ Ziyong Li*

Kal K. Shah (IL Bar No. 6275895)
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606 4637
Telephone: (312) 212-4949
Facsimile: (312) 767-9192
Email: kshah@beneschlaw.com

Ziyong Li (*pro hac vice*)
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
100 Pine Street, Suite 3100
San Francisco, CA 94111
Telephone: (628) 600-2225
Email: sli@beneschlaw.com

*Attorneys for Defendants Hangzhou Hibaby Technology Co., Ltd. and Hibobi Technology Limited*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on October 25, 2022, I electronically filed the **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, TO EXPEDITE THE PRELIMINARY INJUNCTION HEARING, AND TO EXTEND THE OCTOBER 4, 2022 TEMPORARY RESTRAINING ORDER** with the Clerk of Court using the CM/ECF system, which will then send a Notification of Electronic Filing ("NEF") to all counsel of record.

*/s/ Ziyong Li*

*Counsel for Defendants in Schedule A: Hibaby Technology Co., Ltd., and Hibobi Technology Limited*