# Exhibit W



October 25, 2022


Sent via e-mail to sli@beneschlaw.com

Sean Li
Benesch Friedlander Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, CA 94111


Re:     *Interfocus Inc. v. Defendants Listed in Exhibit A*, Case No.: 1:22-cv-02259 (N.D. Ill.)
        Response to Sean Li Email of October 21, 2022


Dear Mr. Li:

        This is in response to your email of October 21, 2022, which included many misleading
and inaccurate statements.  We respond to those statements in the order in which they appear in
your email.

        **1. Alleged outdated evidence.** Your email incorrectly assumes InterFocus was obligated
to report to the Court in its TRO motion that Defendants ("Hibobi") had removed some
infringing product it sold on Hibobi's website before the motion for TRO had been filed. You do
not deny that Hibobi was selling infringing products at the time the TRO motion was filed. The
fact that Hibobi had taken some infringing products off of its website is irrelevant, especially
where, as here, Hibobi has put new infringing products on its website.  Further, although we
believed at one point that Hibobi had removed all infringing products from its website, we have
discovered that is not the case.  Thus, Hibobi has been in contempt of the TRO.  Unless Hibobi
removes all infringing product from all of its websites, we shall file a motion to hold Hibobi in
contempt.

        To make it clear, "infringing products" means any image on a Hibobi website that is a
copy of an Interfocus image that is or has been published on InterFocus' website, whether
registered or not, whether or not it was specifically identified in the TRO motion.  Under U.S.
law, copyright exists in any work of authorship fixed in a tangible medium of expression.  17
U.S.C. § 101.  Registration is not a prerequisite for copyright infringement; registration is
required only as a prerequisite for filing suit.  17 U.S.C. §§ 408(a,), 411(a).  Moreover, in
addition to copyright infringement, the Complaint charges Hibobi with violation of Lanham Act
§43(a), which prohibits false designations of origin.  Hibobi's use of Plaintiff InterFocus'
copyrighted images to sell infringing Hibobi product is a clear violation of Lanham Act §43(a)
because consumers have no way of distinguishing the infringing product from InterFocus'
products.  For example, any defects in Hibobi's infringing products are likely to lead to bad
reviews published over the Internet that may adversely affect InterFocus' reputation.



For the reasons set forth above, Hibobi was obligated by the TRO to cease and desist the use of all copies of InterFocus' images, whether registered or not, whether included in the original complaint and TRO motion or not.

**2. TRO Violation**

There is no merit to your contention that "Plaintiff misled the Court to allow Plaintiff to serve Defendants through Defendants' customer service email, which delayed the notice." First, Hibobi's Rule 7.1 statement states that the names of the Defendants are different from the names of the Defendants listed in Schedule A to the Complaint. We would like an explanation of the difference because the names listed in Schedule A are the names of the owners/applicants of the Hibobi U.S. and Canada trademarks from the records of the World Intellectual Property Organization. InterFocus sent several infringement notices to Hibobi.com, demanding that Hibobi remove infringing products from its website, without any success. In addition, it appears that Hibobi has multiple related companies, some owned by spouses and friends of the person who misappropriated trade secrets from InterFocus' vendor. *See*, Dkt. 10 at 2-3. It is unclear which entities are responsible for the violations of the Copyright Act and Lanham Act alleged in the Complaint. Thus, it appears that Hibobi has engaged in a shell game with its corporate entities.

Under those circumstances the customer service email on the Hibobi.com website, which serves U.S. customers, was the most logical service address to suggest for service in our TRO motion. We reject as implausible your suggestion that your client did not receive notice after the Complaint, TRO, and other pleadings were served on that website. We submit that your client ignored the service of the TRO, as it has ignored all previous communications regarding Hibobi's acts of infringement.

There is also no merit to your suggestion that we should have served Hibobi's CEO (who you did not even name) because InterFocus allegedly knows his address. Even if InterFocus had the alleged CEO's name and address, there was no guarantee that effecting service that person would constitute service on the entity responsible for putting the infringing images on the Hibobi.com website, especially given the corporate shell game that Hibobi has played. Thus, it was more than reasonable to propose that the pleadings in this case, including the Court's order, be served on an email address that the Defendants have listed on the websites in which the infringing products are for sale.

You also incorrectly state, "[r]ight after being aware of the TRO in the customer service email box, Defendants made good faith efforts to locate the images at issue and removed them timely with limited resources." That statement is not true. Infringing images are still being shown on Defendants' websites.

There is no merit to your statement, "Defendants have reason to believe that Plaintiff is using the TRO abusively to harass Defendants' operations in other countries." That statement is categorically false. Plaintiff served the TRO only on third parties who have U.S. operations that process payments for Hibobi's sales of infringing products and those companies who have a duty not to sell infringing products under the Digital Millennium Copyright Act upon receiving notice of infringement. *See* 17 U.S.C. § 512(c)(3) (requiring notice of infringement) and 17 U.S.C. § 512(j) (providing for remedies against a service provider who fails to block or remove any infringing images). We will separately provide the notices we sent to third parties.


*www.rimonlaw.com*

Finally, we again demand that Hibobi remove all copies of InterFocus' images from all of its websites. Contrary to your suggestion, InterFocus is not required to continually search Hibobi's websites to identify copies of InterFocus' images. Hibobi knows which images it copied. Its act was not accidental thus having to rely on the copyright owner's notification. For the images Hibobi copied from InterFocus' website, Hibobi took multiple images for each garment. The infringing acts were obviously deliberate and willful. It must remove them. We interpret your statement as a refusal to remove all infringing images.

### 3. Protective Order

You fail to suggest any reasonable alternative language. We will file a motion to submit our proposed protective order to the Court.

We are available to discuss the issues raised in this letter at your convenience. Please advise us when you would like to discuss them.

Very truly yours,

Rimon P.C.

By: _____

Eric C. Cohen