UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTERFOCUS INC., A California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>The Defendants Identified in SCHEDULE A,<br><br>Defendant. | Case No.: 1:22-cv-02259<br><br>Hon. Steven C. Seeger |

**PLAINTIFF'S REPLY BRIEF ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, TO EXPEDITE THE PRELIMINARY INJUNCTION HEARING, AND TO EXTEND THE OCTOBER 4, 2022 TEMPORARY RESTRAINING ORDER**

Date: October 28, 2022

RIMON, P.C.

Eric C. Cohen
Ill. ARDC No. 0473685
Rimon P.C.
980 N. Michigan Ave., Suite 1400
Chicago, IL 60611
Telephone: (984) 960-2860
Email: eric.cohen@rimonlaw.com

Mark S. Lee
Rimon, P.C.
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
Telephone: 310.561.5776
Email: mark.lee@rimonlaw.com

Zheng Liu
Rimon P.C.
800 Oak Grove Ave., Suite 250
Menlo Park, CA 94025
Telephone: (650) 382-4546
Email: zheng.liu@rimonlaw.com

Attorneys for Plaintiff, INTERFOCUS INC.

I. Reply to Defendants' Introduction ................................................................................. 1
   A. Who Are the Defendants, Really? ........................................................................... 1
   B. Defendants' Background Arguments Are Either Irrelevant Or Factually Incorrect ...... 1
II. Reply to defendants' procedural history ......................................................................... 3
III. reply to Defendants' legal standard argument ................................................................ 4
   A. Copyright Laws Prohibit Copying ........................................................................... 4
   B. The Standard for a Preliminary Injunction ............................................................. 5
IV. plaintiff's motion for preliminary injunction should be granted .................................. 7
   A. Plaintiff is Likely to Succeed on the Merits ............................................................. 7
   B. Plaintiff's Have Suffered Irreparable Injury ............................................................. 9
   C. Defendants Would Suffer No Harm By An Injunction Issued By This Court ............ 12
   D. Permitting Defendants to Continue to Sell Infringing Product Would Violate Public Policy ............................................................................................................................ 13
V. Conclusion ..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*,
  672 F.2d 607 (7th Cir.1982) ............................................................................................... 6

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*,
  499 U.S. 340 (1991) ........................................................................................................... 4

*H-D U.S.A., LLC v. SunFrog, LLC*,
  311 F. Supp.3d 1000 ...................................................................................................... 8, 9

*Helene Curtis Indus., Inc. *898 v. Church & Dwight Co., Inc.*,
  560 F.2d 1325 (7th Cir.1977) ............................................................................................ 9

*Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*,
  735 F.3d 735 (7th Cir. 2013) ........................................................................................... 10

*Life Spine, Inc. v. Aegis Spine, Inc.*,
  8 F.4th 531 (7th Cir. 2021) .................................................................................. 5, 6, 9, 12

*Light v. Zhangyali*,
  2016 WL 4429758 (N.D. Ill. 2016) ................................................................................. 10

*Louis Vuitton S.A. v. Lee*,
  875 F.2d 584 (7th Cir. 1989) ............................................................................................. 8

*Luxottica Grouip S.p.A. v. Li Chen*,
    2017 WL 836228 (N.D. Ill., March 2, 2017) ................................................................... 10

*Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.*,
    299 F.3d 643 (7th Cir.2002) ............................................................................................ 6

*Monster Energy Company v. Wenshang*,
    136 F.Supp.3d 897 (N.D. Ill. 2015) (Lefkow, J.) ............................................................. 6

*PMC, Inc. v. Sherwin–Williams Co.*,
    151 F.3d 610 (7th Cir.1998) ............................................................................................ 6

*Smart Cookie Home Essentials Inc. v. Partnerships and Unincorporated
    Associations Identified in Schedule A*,
    2021 WL 2627771 (N.D. Ill., March 31, 2021) (Pallmeyer, C.J.) ............................... 6, 10

*Speech First, Inc. v. Killeen*,
    968 F.3d 628 (7th Cir. 2020) ........................................................................................... 5

*Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*,
    272 F.3d 441 (7th Cir.2001) ........................................................................................ 4, 5

*Toney v. L'Oreal USA, Inc.*,
    406 F.3d 905 (7th Cir.2005) ............................................................................................ 4

*Ty, Inc. v. GMA Accessories, Inc.*,
    132 F.3d 1167 (7th Cir.1997) .......................................................................................... 5

*Ty, Inc. v. West Highland Pub., Inc.*,
    1998 WL 698922 (N.D. Ill. Oct. 5, 1998) ...................................................................... 10

*Wildlife Express Corp. v. Carol Wright Sales, Inc.*,
    18 F.3d 502 (7th Cir.1994) .............................................................................................. 4

**Statutes**

17 U.S.C. § 101 ......................................................................................................................... 4

17 U.S.C. § 102(a) .................................................................................................................... 4

17 U.S.C. § 410(c) .................................................................................................................... 4

Copyright Laws ......................................................................................................................... 4

Digital Millennium Copyright Act .......................................................................................... 13

Lanham Act § 43(a) .......................................................................................................... 2, 8, 10

iv

**Other Authorities**

Federal Rules of Civil Procedure Rule 7.1 ................................................................................. 1

Federal Rules of Civil Procedure Rule 65(d)............................................................................... 6

## I. REPLY TO DEFENDANTS' INTRODUCTION

### A. Who Are the Defendants, Really?

Plaintiff obtained what it believed were the names of the Defendants in this case from filings the Defendants submitted to the World Intellectual Property Organization and listed those names as the Defendants in Schedule A to the Complaint. *See* Houston Decl., Oct. 28, 2022, Ex. 1, showing that Defendants used the names in Schedule A (Hangzhou Hibaby Technology Co., Ltd. and Hibobi Technology Limited) as the names of applicants for Defendants' trademark applications. Defendants filed their Rule 7.1 notification of affiliates (Dkt. 32), which identifies the names of three organizations, none of which match the names of Defendants listed with the World Intellectual Property Organization.

Defendants state, "It is unclear which entity Defendants intends to sue." Dkt. 32 at 1. Plaintiff submits that it is equally unclear which of the participants in Defendants' corporate shell game are the real Defendants. For now, Plaintiff will refer to the Defendants in this lawsuit simply as "Defendants."

For purposes of this brief, "Defendants"—whatever their real names might be—are the entities responsible for running the websites that use counterfeit InterFocus images to sell their knock-off products.

### B. Defendants' Background Arguments Are Either Irrelevant Or Factually Incorrect

Defendants' contentions that they have licenses from Universal and Viacom (Dkt. 31 at 1) are irrelevant to the issue of whether Defendants copied Plaintiff's copyrighted images from Plaintiff's website. No third-party license excuses Defendants' copying.

Defendants misleadingly refer to "Plaintiff's non-compete lawsuit in China." Dkt. 33 at 1. Plaintiff did not file that lawsuit; it was filed by Plaintiff's vendor. (Declaration of Sandi Graham, October 28, 2022, ¶7)

Defendants' argument that Plaintiff "had detailed information about the Defendants due to the non-compete lawsuit and the employment history" is at best a half-truth. Plaintiff stated in its TRO motion that "a few former employees of [Plaintiff's China-based vendor] misappropriated the source code and other trade secrets to establish one or more websites dedicated to the sale of . . . counterfeit Interfocus merchandise. Dkt. 10 at 2-3; Graham Decl. May 3, 2022, ¶ 20. Given the uncertainty relating to the identity of Defendants (see Section A, above), it was more than reasonable to serve Defendants via the email listed on their infringing website.

Defendants admit that their website included infringing copies of Plaintiff's copyrighted images when they argue that Plaintiff's TRO motion included evidence of "outdated screenshots [of Defendants' website] captured almost one year ago," and falsely argue that "Defendants removed the remaining accused products by October 21, 2022." Dkt. 10 at 2. In the last few days, Plaintiff has discovered that infringing images remain on the Hibobi website Plaintiff originally identified in its motion. (Houston Decl., ¶¶ 6, 11). In addition, Defendants are running a separate "Wholesale" website in which they also sell products using pirated InterFocus images. *Id.* ¶¶ 6-9; Graham Decl., October 28, 2022, ¶ 6.

In short, Defendants continue to play a corporate shell game and continue to infringe InterFocus' copyrights and violate its rights under Lanham Act 43(a). Plaintiff submits that this Court should grant its motion for a preliminary injunction forthwith.

## II. REPLY TO DEFENDANTS' PROCEDURAL HISTORY

There is no merit to Defendants' argument on pages 3-6 to the effect that Plaintiff was obligated to keep checking Defendants' website to make sure infringing images remained on the website when Plaintiff filed its motion for a TRO. At most, Defendants' argument demonstrates that Defendants have engaged in an infringing enterprise, serially used different copies of InterFocus' copyrighted images over time.

Defendants admit that the screenshots filed by Plaintiff in support of its TRO motion were "taken from Defendants' website." Dkt. 33 at 3. Defendants further admit that the "metadata printed on the exhibits shows that the screenshots were taken from December 23, 2021 to March 23, 2022. *Id.* at 4.

Defendants state that the "screenshots relate to 31 products at issue, *six of which were no longer listed when the TRO motion was filed.*" Defendants then state that "one more product had been removed" as of May 27, 2022. (*Id.*) Defendants' statements admit that all of the accused infringing images identified in Mr. Rosenblum's declaration (Dkt. 10-22) were on Defendants' website at the time the screenshots listed in Mr. Rosenblum's declaration were taken. Defendants further admit that 25 of those accused infringing images were on Defendants' website on the date that the TRO was filed, and that 24 of those images were on Defendants' website as of May 27, 2022. Dkt. 33 at 4.

Defendants then argue that additional accused infringing images were removed from Defendants' website by October 13, 2022. *Id.* at 5. Still, seven out of the original 31 infringing images remained on Defendants' website as of that date.

3

As is set forth in the next section of this brief, there is no merit to Defendants' argument that Plaintiff was obligated to report to the Court in its TRO motion or afterwards that Defendants had removed some infringing images from its website.

### III. REPLY TO DEFENDANTS' LEGAL STANDARD ARGUMENT

#### A. Copyright Laws Prohibit Copying

To establish copyright infringement, one must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc*., 499 U.S. 340, 361 (1991).

What is required for copyright protection is "some minimal degree of creativity," or "the existence of ... intellectual production, of thought, and conception." *Id*. at 362 (quoting *Burrow–Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 59–60 (1884)). Generally, copyright protection begins at the moment of creation of "original works of authorship fixed in any tangible medium of expression," including "pictorial, graphic, and sculptural" works and sound recordings. 17 U.S.C. § 102(a). A work is "fixed" in a tangible medium of expression "when its embodiment in a copy ... is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101. See *Toney v. L'Oreal USA, Inc*., 406 F.3d 905, 909 (7th Cir.2005). The owner of a copyright may obtain a certificate of copyright, which is "prima facie evidence" of its validity. 17 U.S.C. § 410(c). See *Wildlife Express Corp. v. Carol Wright Sales, Inc*., 18 F.3d 502, 507 (7th Cir.1994).

Copying may be proven by direct evidence, but that is often hard to come by. In the alternative, copying may be inferred "where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." *Susan Wakeen*

4

*Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 450 (7th Cir.2001) (quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir.1982)). *See also Ty, Inc. v. GMA Accessories, Inc*., 132 F.3d 1167, 1169–70 (7th Cir.1997). It is not essential to prove access, however. If the "two works are so similar as to make it highly probable that the later one is a copy of the earlier one, the issue of access need not be addressed separately, since if the later work was a copy, its creator must have had access to the original." *Ty, Inc.*, 132 F.3d at 1170. "The more a work is both like an already copyrighted work and—for this is equally important—unlike anything that is in the public domain, the less likely it is to be an independent creation." *Id*. at 1169 (emphasis in original). If the inference of copying is drawn from proof of access and substantial similarity, it can be rebutted if the alleged copier can show that she instead "independently created" the allegedly infringing work. *Susan Wakeen Doll Co.,* 272 F.3d at 450.

In this case, a comparison of the copyrighted images with the accused images is sufficient to prove copying: Defendants' accused images are *identical* to Plaintiff's copyrighted images, right down to the models who wear the clothes. Rosenblum Decl. ¶¶4 to 44; Graham Decl. May 3, 2022 (Dkt. No. 10-8) ¶¶15 to 19.

### B. The Standard for a Preliminary Injunction

To obtain a preliminary injunction, a plaintiff must show that it is likely to succeed on the merits, and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without the injunction. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020). If the plaintiff makes this showing, the court weighs the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). This balancing test is done on a sliding

5


scale: "If the plaintiff is likely to win on the merits, the balance of harms need not weigh as heavily in his favor." *Id*. (quoting *Speech First*). In balancing the harms, the court also considers the public interest. *Id.*

Plaintiff argues that a preliminary injunction is "an extraordinary and drastic remedy," citing *Bidi Vapor, LLC v. Vaperz* LLC, 543 F. Supp. 3d 619, 625 (N.D. Ill. 2021). Preliminary injunctions, however, are commonly granted in copyright infringement cases, where, as here, plaintiffs have shown a strong likelihood of success on the merits. *E.g., Smart Cookie Home Essentials Inc. v. Partnerships and Unincorporated Associations Identified in Schedule A,* 2021 WL 2627771 (N.D. Ill., March 31, 2021) (Pallmeyer, C.J.); *Monster Energy Company v. Wenshang*, 136 F.Supp.3d 897 (N.D. Ill. 2015) (Lefkow, J.); *see also, Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 613 (7th Cir. 1982).

The *Bidi* case cited by Defendants is a false advertising case in which the court was asked to determine whether the defendant's electronic cigarette contained 6% nicotine as advertised, or less, as plaintiff contended. In contrast, this case involves blatant copying of copyrighted images by a company comprised of former employees of Plaintiff.

Rule 65(d) of the Federal Rules of Civil Procedure requires that the injunction set "forth the reasons for its issuance; ... be specific in terms; ... [and] describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." *See also Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.*, 299 F.3d 643, 646 (7th Cir.2002) (stating that any injunction issued by a federal district court must be detailed and specific to ensure proper enforcement through contempt proceedings or otherwise); *PMC, Inc. v. Sherwin–Williams Co.*, 151 F.3d 610, 619 (7th Cir.1998) (finding

6

that an injunction must "be precise and self-contained, so that a person subject to it who reads it and nothing else has a sufficiently clear and exact knowledge of the duties it imposes on him that if he violates it he can be adjudged guilty of criminal contempt").

Plaintiff's motion for TRO establishes beyond peradventure that Defendants copied many images from Plaintiff's website and displayed those copied images on Defendants' website for the purpose of selling knock-offs of Plaintiff's popular line of clothing. There is no merit to Defendants' arguments.

### IV.  PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION SHOULD BE GRANTED

First, there is no merit to Defendants' argument bridging pages 6-7 of their brief to the effect that Plaintiff's PI motion "lacks specificity as to what it intends to restrain." Plaintiffs request that this Court grant the same relief as in the temporary restraining order entered on October 4, 2022. In particular, Plaintiffs request that Defendants cease copying images from Plaintiff's website. Period.

#### A. Plaintiff is Likely to Succeed on the Merits

Defendants incorrectly argue that "Plaintiff failed to state which photographs are asserted exactly." Dkt. 33 at 7. The Rosenblum declaration carefully compares each of 31 accused infringing images with the corresponding copyrighted image. Further, Defendants invite this Court to play "whack-a-mole," when they argue in essence that Plaintiffs should identify each image Defendants have copied before this Court enjoins them from copying it. Nonsense. Defendants have engaged in a pattern of copying copyrighted images from Plaintiff's website and using those images to sell product on Defendants' website. Where, as here, there has been a pattern of copyright infringement, this Court has the power to issue an injunction that simply enjoins Defendants from copying any images from Plaintiff's website.

With respect to the Lanham Act, Defendants make the specious argument that there can't be likelihood of confusion "given the small around of sales." There is no exception for small sales under Lanham Act § 43(a), and Courts have granted injunctions in the case of very small amounts of sales. *See, e.g. Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 586 (7th Cir. 1989) (injunction entered where Defendant admitted to sales of six fake Vuitton and Gucci items, but investigator testified he had observed about 75 fake items).

Like the counterfeiter in *Vuitton,* the Defendants in this case continue to infringe, even though they say they have stopped. Dkt. 33 at 2 (stating "Defendants removed the remaining accused products by October 21, 2022"). On the contrary, on October 25, 2022, Plaintiff discovered additional counterfeit images on Defendants' website. Houston Decl., ¶¶ 7-9. On October 27, 2022, Plaintiff became aware that Defendants were surreptitiously running another website, www. babiesclotheswholesale.com ("the Wholesale Website"), in which Defendants continue to use infringing copies of InterFocus' copyrighted images to market "wholesale" products. Graham Decl., October 28, 2022, ¶ 6; Houston Decl., ¶¶ 10-12. Under these circumstances, it is difficult to credit any of Defendants' representations.

Moreover, Defendants' website display of copies of Plaintiff's copyrighted images are bound to cause a likelihood of confusion, where, as here Defendant's copies are identical to Plaintiff's images. *E.g.*, *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp.3d 1000. 1032-33 (E.D. Wis. 2018). The Seventh Circuit considers the following factors to determine whether consumers are likely to be confused: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to "palm off" his product

8

as that of the plaintiffs. *Helene Curtis Indus., Inc.* *898 *v. Church & Dwight Co., Inc.,* 560 F.2d 1325, 1330 (7th Cir.1977).  Here, Defendants' images are indistinguishable from Plaintiff's copyrighted images; they are used to sell identical apparel to the general public; it would be impossible for a member of the public to distinguish one of Plaintiff's products from one of Defendants, and Defendants intent to palm off their own products as Plaintiff's can be inferred from the copying.  *E.g.*, *H-D U.S.A.*, 311 F.3d at 1033.

### B.  Plaintiff's Have Suffered Irreparable Injury

Harm is irreparable if legal remedies are inadequate to cure it. *Life Spine*, 8 F.4th at 545, citing *Foodcomm Intern. V. Barry,* 328 F.3d 300, 304 (7th Cir. 2003) (finding irreparable injury for loss of a relationship because "it is not practicable to calculate damages to remedy this kind of harm").  Inadequate "does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Id*.  Thus, the Seventh Circuit has recognized that the loss of customers and market share constitutes irreparable injury where the lost customers or contacts were not fully identifiable. *Life Spine*, 4 F.4th at 545 ("it is precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable'"). *Id.* The loss of goodwill and reputation also constitutes irreparable injury. *Id.*

In this case, Defendants are using pirated copies of Plaintiff's copyrighted images to market products that facially appear to be identical to Plaintiff's products.  Plaintiff's customers purchase products over the Internet. Under these circumstances, it is impossible for Plaintiff to determine how many customers it has lost, the reasons those customers purchased Defendants' products instead of Plaintiff's products, or whether Defendants' customers who were dissatisfied with Defendants' products. Graham Decl., Oct. 28, 2022, ¶ 8.

9

There is no merit to Defendants' arguments to the effect that Plaintiff has not suffered irreparable harm because Defendants' sales were "small" or because Defendants have allegedly removed the infringing images from their website. Defendants cite no case for the proposition that small sales equates with no irreparable injury. The law is to the contrary.

Irreparable injury is inherent in instances of copyright infringement or violations of Lanham Act §43(a). "The proliferation of lower-quality, counterfeit goods damages a brand's value and goodwill, and a significant award is required to deter defendant and others from engaging in similar conduct." *E.g., Luxottica Group S.p.A. v. Li Chen,* 2017 WL 836228 at *3(N.D. Ill., March 2, 2017); *Light v. Zhangyali,* 2016 WL 4429758 at *4 (N.D. Ill. 2016) ("The proliferation of lower-quality, counterfeit goods damages a brand's value and goodwill"); *Smart Cookie Home Essentials,* 2021 WL 2627771 at *2 (Defendants' continued and unauthorized use of the BURGER MASTER Trademark and the Burger Master Copyright irreparably harms Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Monetary damages fail to address such injury and, therefore, Plaintiff has an inadequate remedy at law"); *Ty, Inc. v. West Highland Pub., Inc.*, 1998 WL 698922 (N.D. Ill. Oct. 5, 1998) (finding irreparable harm where the plaintiff "has created a shrewd marketing plan for its plush toys, and further infringement . . . may injure that plan and Ty's goodwill beyond repair"). *See also, Kraft Foods Group Brands LLC v. Cracker Barrell Old Country Store, Inc.*, 735 F.3d 735, 740, 741 (7th Cir. 2013) ("irreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion (and the interval between the filing of a trademark infringement complaint and final judgment is sure not to be trivial)").

10

In this case, Plaintiff created a market niche of designing and selling "full fashion garments for adults and children . . . with good quality." Graham Decl., May 3, 2022, ¶ 5 (Dkt. 10-8). Plaintiff was the first company to feature "full family matching clothing." *Id.* ¶ 6. Plaintiff "hires professional photographers to take high quality photos of our garments, including paying for models to have professional photos of our clothing," and has filed over 450 copyright applications with the U.S. Copyright Office. *Id.* ¶¶ 8, 9. The sale of knock-offs of Plaintiff's clothing line by infringers such as Defendants deprives Plaintiff of control of the goodwill it has established in its unique line of clothing. Any defects with Defendants' copycat products will inevitably be blamed on Plaintiff. *Id.* ¶¶21-25. For example, "counterfeiters take away Plaintiff's ability to control the nature and quality" of Defendants' unauthorized products. *Id.* ¶ 24. Loss of quality control over goods that look exactly the same as Plaintiff's goods means that Plaintiff loses control over its reputation, which is "neither calculable nor precisely compensable." *Id.* Further, the first order of garments from Defendants took more than three weeks to arrive in Chicago, and the second order never arrived, not even after about seven weeks and multiple phone calls Defendants' customer service hotline. *Id.* at 25. Plaintiff's reputation could be harmed by such shoddy services. *Id.*

As noted above, Defendants misrepresented that they removed all infringing products from their websites; but, they haven't. On October 25, 2022, Plaintiff discovered additional counterfeit images on Defendants' website. Houston Decl., October 28, 2022, ¶¶ 7-9. Then, on October 27, 2022, Plaintiff became aware that Defendants were surreptitiously running another website, www. babiesclotheswholesale.com ("the Wholesale Website"). *Id.* ¶ 9; Graham Decl., October 28, 2022, ¶ 6. One of the counterfeit images on the Wholesale

11

Website depicts a product that Ms. Graham designed. Graham Decl., Oct. 28, 2022 ¶ 6; Houston Decl., ¶¶ 10-11.

There is no merit to Defendants' argument that the asset freeze should be lifted. Defendants' statement that it has "produced relevant sales information" is false, given that Defendants have still been selling products using Plaintiff's copyrighted images on websites that Plaintiff just recently discovered. Defendants are engaging in a cat-and-mouse game, conceding infringement when they get caught, while at the same time continuing to copy Plaintiff's copyrighted images and use those images to sell knock-offs.

### C. Defendants Would Suffer No Harm By An Injunction Issued By This Court

Where, as here, Plaintiff has demonstrated a strong likelihood of success on the merits, any harm that Defendants would allegedly suffer if an injunction were issued deserves short shrift. *Life Spine,* 4F.4th at 539. Because Plaintiff requests an injunction that would enjoin Defendants from copying any images from Plaintiff's website, Defendants would suffer no cognizable harm by its issuance. For example, Defendants argue that they have a license from "Universal Studio" and Viacom. Dkt. 10 at 10. If that is true, then the injunction Plaintiff requests would not prevent Defendants from marketing legitimate, licensed products. But those licenses, do not excuse Defendants' pirating of Plaintiffs' copyrighted images or the copyrights of other brand owners, such as Nike, Burberry and Disney, whose products Defendants are also knocking off. Graham Decl. May 3, 2022, ¶ 12.

Defendants' complaints about PayPal and Checkout are misplaced. Given Defendants continued sale of products based on counterfeits of Plaintiff's copyrighted images, Plaintiff seriously doubts that any of the factual statements made by Defendants are true.

Defendants complain that they "received an infringement notice from Apple" and that "the Hibobi Apple App has been hidden in the App Store. Dkt. 33 at 11. However, the TRO issued by this Court did not require Apple to do anything and was not the cause of Apple's removal of the Hibobi App. Plaintiff sent a notice to Apple as prescribed under the Digital Millennium Copyright Act, providing notice that this Court had issued the TRO. Houston Decl., Oct. 28, 2022, ¶5. On its own accord, Apple took the actions Defendants complain of. The same is true of the notice Plaintiff sent to Aramex. *Id.* Aramex made its own decision after being notified that Defendants had sold infringing products. It is not surprising that legitimate companies do not want to be part of Defendants' counterfeiting enterprise.

There is no merit to Defendants' complaint that they will have problems marketing their counterfeit products during the holiday season. The last thing this country needs is for consumers to be flooded with inferior, counterfeit products. If, as Defendants claim, they are selling some legitimate products, they can take that up with Apple. Again, this Court's order did not cause Apple to issue the infringement notice and take down Defendants' App. Apple, a sophisticated company, is capable of making its own determinations, once it is provided with notice.

### D. Permitting Defendants to Continue to Sell Infringing Product Would Violate Public Policy

An injunction issued by this Court would be in the interest of public policy. There is no public interest in permitting ongoing copying of copyrighted images for the purpose of selling knockoffs of Plaintiff's line of clothing. And, as the new evidence submitted with this brief demonstrates, Defendants continue to engage in counterfeiting when they think they won't get caught.

13

## V.  CONCLUSION

For the reasons set forth above, and in the motion in support of a temporary restraining order, Plaintiff submits that this Court should grant Plaintiff's motion for a preliminary injunction.

Date:  October 28, 2022

Respectfully submitted,

RIMON, P.C.

/s/ Eric C. Cohen

Ill. ARDC No. 0473685
Rimon P.C.
980 N. Michigan Ave., Suite 1400
Chicago, IL 60611
Telephone: (984) 960-2860
Email: eric.cohen@rimonlaw.com

Mark S. Lee
Rimon, P.C.
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
Telephone: 310.561.5776
Email: mark.lee@rimonlaw.com

Zheng Liu
Rimon P.C.
800 Oak Grove Ave., Suite 250
Menlo Park, CA 94025
Telephone: (650) 382-4546
Email: zheng.liu@rimonlaw.com

Attorneys for Plaintiff, INTERFOCUS INC.

**Certificate of Service**

      I hereby certify that on October 28, 2022, this document was filed with the Clerk of the Court using CM/ECF, which will send notification of the filing to all attorneys of record in this case.

      /s/ Eric C. Cohen
      Eric C. Cohen