UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTERFOCUS INC., a California Corporation,<br><br>                Plaintiff,<br><br>v.<br><br>Hibobi Technology Ltd; Hangzhou Hibaby Technology Co. Ltd; Hangzhou Haibaobei Technology Co., Ltd; Hangzhou Hibao Technology Co., Ltd. Hibobi Holdings, Limited, and Hangzhou Jiulong Technology Co. Ltd.<br><br>                Defendants. | Case No.: 1:22-cv-02259<br><br>Honorable Steven C. Seeger |

**FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

Plaintiff INTERFOCUS INC. ("Plaintiff" or "InterFocus") hereby brings the present action against HIBOBI TECHNOLOGY LTD, HANGZHOU HIBABY TECHNOLOGY CO. LTD., HANGZHOU HAIBAOBEI TECHNOLOGY CO., LTD., HANGZHOU HIBAO TECHNOLOGY CO., LTD., HIBOBI HOLDINGS LIMITED, and HANGZHOU JIULONG TECHNOLOGY CO. LTD. ("Defendants") and alleges as follows:

**I.    JURISDICTION AND VENUE**

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Copyright Act 17 U.S.C. § 501, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331 and Lanham Act §43(a), 15 U.S.C. § 1125(a).

2.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 and §1400, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants work jointly to directly targets business activities toward consumers in the United States, including Illinois, through fully interactive e-commerce stores that offers to sell and sell

infringing and counterfeit goods in this District. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offers shipping to the United States, including Illinois, accept payment in U.S. dollars and have sold products using infringing and counterfeit versions of Plaintiff's copyrighted designs using Plaintiff's copyrighted images (collectively, the "Counterfeit InterFocus Products") to residents of Illinois. Defendants are committing tortious acts in Illinois, are engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. Plaintiff filed this action to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by infringing Plaintiff's copyrights to sell and/or offer to sell Counterfeit InterFocus Products through a variety of websites. Defendants were formed by former employees of one of Plaintiff's vendors, who misappropriated source code for Plaintiff's website and who established what appear to be a series of shell corporations who are engaged primarily in serial infringements of Plaintiff's copyrighted images to sell counterfeit merchandise. Prior to filing this lawsuit, Plaintiff sent several cease and desist letters in an attempt to persuade Defendants to cease using infringing photos on their websites. Defendants did not respond to a single cease and desist letter. After Defendants received notice of this Court's temporary restraining order, Defendants ceased displaying the images identified in the Complaint, but posted other infringing images on Defendants' websites that were different from the websites identified in the Complaint. Attempting to stop Defendants' serial acts of infringement has been akin to playing the video game "Whack-A-Mole." Plaintiff has been and continues to be irreparably harmed through Defendants' serial infringements of its copyrighted

2

images. Plaintiff seeks a preliminary and permanent injunction and enhanced statutory damages in the amount of over $40 million for Defendants' acts of willful infringement.

### III. THE PARTIES

**A. Plaintiff**

4. Plaintiff InterFocus is a California Corporation having its principal place of business in Mountain View, California, that does business in Illinois.

5. Since 2014, InterFocus has operated an online store that markets high quality adult and children's clothing available to the public. Interfocus' online store is available on its website, https://us.patpat.com/ ("Plaintiff's Website" or "patpat.com website").

6. Many items of clothing InterFocus sells on its "patpat.com" website are its own original designs, which are or include original works of authorship fixed in a tangible medium of expression, which are protected under U.S. Copyright law, and which include non-functional design features. In addition, InterFocus has applied for and received at least three registrations for the "patpat" trademark and logo, Nos. 4,989,569, 4,989,570, and 6,559,059, from the United States Trademark Office. See **Exhibit 100**[1].

7. Plaintiff has taken and directed the taking of professional photos of its products. Plaintiff has registered many of its photos with the United States Copyright Office ("InterFocus Copyrighted Images") and using such photos exclusively on the patpat.com website to sell products of its own design ("InterFocus Designs").

---

[1] Exhibits 1-99 are reserved for copyright registrations and proof of infringement for **Schedule A**, described *infra*.

### B. The Defendants

8. Plaintiff outsourced some of its backend services, including management of the patpat.com website, to a China-based vendor Shenzhen Yingfusi Technology Co. Ltd. ("Yingfusi"). In 2019, a few former employees of this vendor misappropriated Plaintiff's source code and other trade secrets to establish one or more of the Defendant companies.

9. On information and belief, the companies formed by the former employees include Defendants Hibobi Technology Limited and Hangzhou Hibaby Technology Co., Ltd., both of which are companies organized in, and that reside in and operate from, Hong Kong and China to take advantage of the relatively lax intellectual property enforcement systems in place there., so as to facilitate the sale of counterfeit and infringing InterFocus and other goods to the U.S. and Illinois consuming public. Plaintiff is informed and believes that Hibobi Technology Limited is a China-based company that owns the website www.hibobi.com selling such products. Plaintiff is informed and believes that Hangzhou Hibaby Technology Co., Ltd is related to the first Defendant and owns the mobile apps linked to the website www.hibobi.com to sell such products and the mobile apps are downloadable by U.S. consumers from Apple app store and Google Play. Said Defendants were identified in Schedule A to the original complaint, which was previously filed under seal to prevent Defendants from hiding evidence and/or assets if given notice of this lawsuit. Those and other Defendants have now been served and have appeared in this action, and thus are now publicly identified herein.

10. After Plaintiff served its original Complaint pursuant to this Court's Order of October 4, 2022 (Dkt. 22), Defendants identified in Dkt No. 32 three additional entities, which Plaintiff believes were formed by the same former employees, and who Plaintiff is now informed and believe also have participated in the infringing actions described herein. Plaintiff is informed

4

and believes that Defendant Hangzhou Haibaobei Technology Co., Ltd is a wholly owned subsidiary of Defendant Hangzhou Hibao Technology Co., Ltd, which in turn is a wholly owned subsidiary of previously identified Defendant Hibobi Technology Limited. Plaintiff is further informed and believes and on that basis alleges that Defendant Hibobi Technology Limited is a wholly owned subsidiary of Defendant Hibobi Holdings Limited. On or around October 27, 2022, Plaintiff discovered that Defendant Hibobi Technology Limited also operates a website called [www.babiesclotheswholesale.com](www.babiesclotheswholesale.com), which featuring InterFocus Copyrighted Images without permission. As discussed in the Reply Brief supporting Plaintiff's Motion for Preliminary Injunction (Dkt No. 38), this wholesale website listed Defendant Hibobi Technology Limited at the bottom of the website. See **Exhibit No. 101**. On or around November 10, 2022, Plaintiff discovered that [www.riolio.com](www.riolio.com), a website Plaintiff previously sent Cease and Desist notices for using InterFocu Copyrighted Images without permission (see attached as **Exhibit 102** two of such Cease and Desist notices sent), is operated by another entity relating to the above identified Defendants, a company called Hangzhou Jiulong Technology Co. Ltd. ("Hangzhou Jiulong"). Hangzhou Jiulong's address is listed in the "Contact Us" page of the riolio.com website. See **Exhibit No. 103**. The "Riolio" trademark was listed under Defendant Hibobi Technology Limited. See **Exhibit No. 104**. Hangzhou Jiulong's Legal Representative on Chinese government's website is one of the same former Yingfusi employees that left Yingfusi to establish one or more of the known Defendants and Hangzhou Jiulong has the same address as the one listed on riolio.com website. See **Exhibit 105**. Plaintiff is informed and believes that these inter-related corporate entities were organized in this manner to make it more difficult to identify and hold accountable those entities responsible for the infringing activities described herein.

11. Plaintiff is informed and believes that all of the above-named Defendants personally participated in the infringing activity described herein, and/or controlled, supervised, directed, and directly and indirectly profited from the infringing activities of each of the other Defendants named herein.

12. All Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

### IV.     DEFENDANTS' UNLAWFUL CONDUCT

13. The success of InterFocus' genuine products on its "patpat.com" website has resulted in significant copying of dozens of the InterFocus Copyrighted Images and Designs by Defendants, and sales of dozens of those products on Defendants' website beginning no later than 2020. Further, Plaintiff has discovered that Defendants are also selling what appear to be counterfeit products purporting to come from other prominent brands such as Nike, Burberry, Batman, Shark baby, and Disney. Plaintiff is informed and believes that Defendants operate their website to sell counterfeit and infringing products.

14. Defendants target consumers in this Judicial District and throughout the United States through these efforts. According to U.S. Customs and Border Protection (CBP), most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters. "The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States prepared for The Buy Safe America Coalition" by John Dunham & Associates (**Exhibit 106**). The bulk of counterfeit products sent to the United States "come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights (IPR) violations. Id. Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was

6

from China. Id. Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. Id.

15. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 107**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 108**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 107** at 186–187.

16. Defendants have targeted sales to Illinois residents by setting up and operating their website that targets United States consumers offering shipping to the United States, including Illinois, accepting payment in U.S. dollars and it has sold Counterfeit InterFocus Products to residents of Illinois.

17. Defendants concurrently employ and benefit from advertising and marketing strategies substantially similar to InterFocus' strategies. In addition, Defendants facilitate sales by using source code from InterFocus and designing its website so that it appears to unknowing consumers to be similar to Plaintiff's "patpat.com" site, as well as those of other authorized

7

online retailers, outlet stores, or wholesalers. Defendants' website appears sophisticated and accepts payment in U.S. dollars via Visa, Master, and American Express credit cards, Diners Club International, JCB, Maestro, OXXO, Checkout.com, Stripe, and/or PayPal. It includes unauthorized InterFocus Copyrighted Images and other content that make it very difficult for consumers to distinguish its online store from that of an authorized retailer. Sometimes the unauthorized use of InterFocus Copyrighted Images is so blatant that the "patpat" trademark and logo on the clothes in the infringing image are still visible. Comparing **Exhibits 8B, 8C and 8D**. Plaintiff has not licensed or authorized Defendants to use, copy or distribute any of the unauthorized InterFocus Copyrighted Images, and it is not an authorized retailer of genuine InterFocus products.

18. Without any authorization or license from Plaintiff, Defendants have knowingly and willfully used and continue to use copies of hundreds of InterFocus Copyrighted Images in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit InterFocus Products into the United States and Illinois over the internet.

19. Plaintiff filed its original Complaint against Defendants on April 29, 2022. The original Complaint alleged that Defendants had infringed hundreds of Plaintiff's copyrights. Since then, Plaintiff has discovered that Defendants have infringed additional copyrights.

20. Attached as **Schedule A** is a table that lists (A) certificates of copyright registration for each work that Defendants have infringed, (B) the corresponding deposit copy submitted with each application to register the copyright, (C) the corresponding copyrighted image used by Plaintiff in Plaintiff's website, and (D) the accused infringing image used by Defendants in their "Hibobi" website and other websites to market Defendants' knock-off products. Copies of Group Exhibits 1-68, referred to in **Schedule A**, are attached to this

8

Amended and Supplemental Complaint. In each of the Group Exhibits, for example 1A is the copyright registration, 1B is the deposit copy, 1C is the copyrighted image from Plaintiff's website, and 1D is the accused infringing image. Many of the copyrights cover group registrations; in other words, registrations for multiple copyrighted images.

21. As used in this Amended and Supplemental Complaint, the phrase "InterFocus Copyrighted Images" means any copyrighted Interfocus image, including those identified in **Schedule A** in this Amended and Supplemental Complaint.

22. Since first publication, Plaintiff has reproduced its InterFocus Copyrighted Images on Plaintiff's website to sell the InterFocus Products.

23. In or about May 2020, Plaintiff became aware that the website www.hibobi.com was using infringing copies of Plaintiff's Copyrighted Images to sell such knock-off products. Subsequently, Plaintiff also recently became aware that Defendants were using infringing copies of Plaintiff's Copyrighted Images to sell infringing products on www.riolio.com and www.babiesclotheswholesale.com. See **Exhibits 36D, page 2, 49D, pages 2-11, 65D, 67D and 68D**.

24. After Plaintiff discovered that Defendants were infringing its copyrights in InterFocus Copyrighted Images no later than May 2020, it sent cease and desist letters and DMCA takedown notices to Defendants beginning at that time that Defendants never responded to and largely ignored. On May 29, 2020, it sent a cease and desist notice demanding that Defendants cease and desist their infringing activities, and takedown the infringing images identified in that takedown notice. It has repeatedly sent cease and desist letters and takedown notices since that time. True and correct copies of the May 29, 2020 takedown notice, and

subsequent exemplar takedown notices it sent on June 30, 2021, July 12, 2021, and September 30, 2022, are attached as **Exhibit 109.**

25.     Defendants failed to respond to all of Plaintiff's cease and desist letters and takedown notices, and continued to infringe Plaintiff's images in the images identified as it thought best for its own commercial purposes. For example, despite Plaintiff's cease and desist letters and takedown notices including those cited above in **Exhibit 109**, Defendants ignored the cease and desist notices and continued to infringe many such images for months.  Specifically, for the InterFocus Copyright Images identified in the table below, Defendants did not take them down until they were forced to by this Court's temporary restraining order entered on October 4, 2022:

| Copyright Registration # | Takedown Demand Date | Actual Takedown Date | Exhibits showing actual images |
|---|---|---|---|
| VA0002282229 | 2021/06/30 | 2022/10/21 13:49:15 | 8A-D |
| VA0002289507 | 2021/06/30 | 2022/10/20 16:16:46 | 11A-D |
| VA0002289507 | 2021/06/30 | 2022/10/19 22:33:39 | 36A-D |
| VAu001404114 | 2022/09/30 | 2022/10/15 13:23:18 | 7A-D |

26.     Further, since it filed its original complaint and motion for temporary restraining order, Plaintiff has discovered that Defendants have infringed many more InterFocus Copyrighted Works than it knew about and were previously identified.  Although Defendants

10

have claimed to the Court that they have "taken down" their infringing images in the works to the original Complaint and motion for temporary restraining order, see Dkt. No. 35 at 6, Plaintiff discovered after filing the Complaint and motion for temporary restraining order that Defendants have infringed InterFocus's copyright in hundreds of additional works in which InterFocus has applied for and/or obtained copyright registrations, sometimes at new online locations Defendants own and control, such as the website viewable at https://www.babiesclotheswholesale.com/, as shown in the **Schedule A**. As recent as yesterday November 14, 2022, Plaintiff discovered additional InterFocus Copyrighted Images on one or more of Defendants' websites, which are included in **Schedule A**. See **Exhibits 58, 67 and 68**. The total number of InterFocus Images that Plaintiff has so far discovered as used by Defendants without permission is, at the minimum, 302. Among them, about 130 images were discovered after the original Complaint and motion for TRO were filed. Defendants thus are continuing to engage in, serial infringement of InterFocus Copyrighted Works even after being sued for copyright infringement by Plaintiff and restrained from infringement by this Court.

27. Defendants' continuing sale of Counterfeit InterFocus Products using InterFocus Copyrighted Images into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

28. In addition to infringing Plaintiff's copyrights, it appears that Defendants have also been infringing copyrights owned by other apparel companies.

# COUNT I

## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. §§1115 AND 1117(b))

29. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1-28, above.

30. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered patpat trademark and logo in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The patpat trademark and logo are highly distinctive. Consumers have come to expect the highest quality from Plaintiffs' products provided under the patpat trademark and logo.

31. Defendants have sold, offered to sell, marketed, distributed, and advertised products in connection with the patpat trademark and logo without Plaintiffs' permission.

32. Plaintiffs are the exclusive owner and licensee of the patpat trademark and logo.

33. Plaintiffs' United States Registrations for the patpat trademark and logo are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in the patpat trademark and logo and are willfully infringing and intentionally using counterfeits of the patpat trademark and logo. Defendants' willful, intentional and unauthorized use of the patpat trademark and logo are likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

34. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. §§ 1114 and 1117(b).

35. Plaintiffs have no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to its reputation and the goodwill of their well-known patpat trademark and logo.

36. The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertise, promotion, offering to sell, and sale of counterfeit patpat products.

## COUNT II

### COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106 et seq AND 501)

37. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1-36, above.

38. The InterFocus Copyrighted Images constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §§ 101, et seq.

39. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for those InterFocus Copyrighted Images for which a copyright registration number is listed in **Schedule A**. InterFocus also has applied for, and anticipates receiving copyright registrations for, those works identified by copyright application number as listed in **Schedule A**. At all relevant times, InterFocus has been and still is the owner of all rights, title, and interest in all of the InterFocus Copyrighted Images identified in **Schedule A**, which have never been assigned, licensed, or otherwise transferred to Defendants.

40. The InterFocus Copyrighted Images are published on the internet and available to Defendants online. As such, Defendant had access to the InterFocus Copyrighted Images via the internet.

13

41. Without authorization from Plaintiff, or any right under the law, Defendants have deliberately copied, displayed, distributed, sold, reproduced and/or made derivate works incorporating the InterFocus Copyrighted Images and Designs on Defendants' websites, and have continued to engage in that activity since learning of this action. Defendants' images are identical to the InterFocus Copyrighted Images, and InterFocus Designs, except that the images on Defendant's website are of lower resolution, typical of copying. Such conduct infringes and continues to infringe the InterFocus Copyrighted Images and Designs that have been registered for copyright in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

42. Defendants' actions in posting InterFocus Copyrighted Images on websites they own and control, or in supervising other Defendants who posted InterFocus Copyrighted Images and Designs on websites Defendants own and control, also induce, cause and materially contribute to the innocent infringement of Plaintiff's copyrights by U.S. and Illinois consumers, who unknowingly download InterFocus Copyrighted Images and Designs from Defendants' websites and thereby create a copy of them on their own computers every time they view those images. Such consumers are induced to purchase counterfeit InterFocus goods from Defendants based on those infringing views Defendants' actions made possible. Further, Defendants intentionally posted or supervised other Defendants' posting of InterFocus Copyrighted Images and Designs, and encouraged U.S. and Illinois consumers to copy InterFocus Copyrighted Images and Designs, for Defendants' own benefit and with the sole purpose of facilitating Defendants' sale of counterfeit InterFocus goods. Defendants at all times retained the ability to control consumers' innocent infringement of Plaintiff's by taking down from their websites the InterFocus Copyrighted Images and Designs Defendants posted there in violation of Plaintiff's rights.

14

43. Defendants reap the benefits of the unauthorized copying and distribution of the InterFocus Copyrighted Images and Designs in the form of revenue and other profits that are driven by the sale of Counterfeit InterFocus Products depicting by these images.

44. Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating counterfeit and Counterfeit InterFocus Products that are virtually identical to InterFocus Copyrighted Images and Designs.

45. On information and belief, Defendants' infringement has been willful, intentional, and purposeful, and in disregard of and with indifference to Plaintiff's rights.

46. Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

47. Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of the InterFocus Copyrighted Images and Designs.

## COUNT III

### VIOLATION OF LANHAM ACT SECTION 43(a), 15 U.S.C. 1125(a)

48. Plaintiff realleges and incorporates by reference paragraphs 1-47, above.

49. Defendants have marketed through websites that have offered for sale counterfeit versions of Plaintiff's products in a manner that is likely to cause confusion and, in fact, has caused confusion with respect to the origin, sponsorship or approval of such products in violation of 15 U.S.C. § 1125(a).

50. Defendants, through the operation of their websites have caused the importation of counterfeit goods in violation of 15 U.S.C. § 1125(b).

51. Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law.

52. Plaintiff is entitled to recover three times the Defendants' profits, any damages sustained by Plaintiff, and the costs of this action under 15 U.S.C. § 1117(a).

53. Plaintiff is entitled to an injunction under 15 U.S.C. § 1116.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, principals, confederates, and all persons acting for, with, by, through under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    1. Reproducing, distributing copies of, making derivative works of, or publicly displaying the InterFocus Copyrighted Images for which it has obtained copyright registrations or which are viewable on the website viewable at https://us.patpat.com/ in any manner without the express authorization of Plaintiff;

    2. Passing off, inducing, or enabling others to sell or pass off any product bearing the InterFocus Designs as a genuine InterFocus Product that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for such sale;

    Committing any acts calculated to cause consumers to believe that Defendants' Counterfeit InterFocus Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    3. Further infringing the InterFocus Copyrighted Images and Designs and damaging Plaintiff's goodwill; and

    4. Manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, using the InterFocus Copyrighted Images or any substantially similar derivative thereof;

B. For entry of an Order that, upon Plaintiff's request, those with notice of the injunction who process payments for infringing products sold by Defendants (collectively, "Third Party Payment Providers"), shall disable accounts used by or associated with Defendants in connection with the sale of counterfeit and infringing goods which bear the InterFocus Designs and using InterFocus Copyrighted Images;

C. For entry of an Order that, upon Plaintiff's request, Third Party App Stores with notice of the injunction shall remove any Apps used by or associated with Defendants in connection with the sale of counterfeit and infringing goods which bear the InterFocus Designs and using InterFocus Copyrighted Images or any substantially similar derivative thereof;

D. That Defendant account for and pay to Plaintiff all damages Plaintiff suffered and all profits Defendants realized by reason of Defendants' infringement of the InterFocus trademark and logo pursuant to 15 U.S.C. §§1115 and 1117(b); or alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $600,000.

E. That Defendant account for and pay to Plaintiff all damages Plaintiff suffered and all profits Defendants realized by reason of Defendants' infringement of the InterFocus Designs and InterFocus Copyrighted Images pursuant to 17 U.S.C.§ 504(b) and 15 U.S.C. § 1125(a); or alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), therefore $45.3 million, or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

F.  For an award of damages pursuant to 15 U.S.C. §1117(a) for Defendants' false designations of origin in violation of 15 U.S.C. § 1125(a) and to increase such damages three-fold as provided under § 1117(a);

G.  For the Court to find that this case is exceptional under 15 U.S.C. §1117(a) and to award Plaintiff its costs and attorneys' fees;

H.  For an award of Plaintiff's attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a); and,

H.  For such other and further relief as this Court deems just and proper.

Date:  November 15, 2022

Respectfully submitted,

RIMON, P.C.

/s/ Eric C. Cohen
Eric C. Cohen
Ill. ARDC No. 0473685
Rimon P.C.
980 N. Michigan Ave., Suite 1400
Chicago, IL 60611
Telephone: (984) 960-2860
Email: eric.cohen@rimonlaw.com

Mark S. Lee
Rimon, P.C.
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
Telephone: 310.561.5776
Email: mark.lee@rimonlaw.com

Zheng Liu
Rimon P.C.
800 Oak Grove Ave., Suite 250
Menlo Park, CA 94025
Telephone: (650) 382-4546
Email: zheng.liu@rimonlaw.com

Attorneys for Plaintiff, INTERFOCUS INC.